## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

|  |  |
|---|---|
| SHENZHEN HUAIZHEN INNOVATION INVESTMENT FUND PARTNERSHIP (LIMITED PARTNERSHIP), | Case No. 2:21-cv-02021-CSB-EIL |
| Plaintiff, | Hon. Colin S. Bruce |
| vs. | Magistrate Judge Eric I. Long |
| KEVIN KELIN WAN, |  |
| Defendant. |  |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION PURSUANT TO FRCP 54(b) FOR THIS COURT TO RECONSIDER AND SET ASIDE ITS ORDER, DATED JUNE 29, 2021, VACATING DEFENDANT'S DEFAULT

Stephen L. Brodsky, Esq.
Laura D. Castner, Esq.
Jessica Chen, Esq.
**MAZZOLA LINDSTROM LLP**
1350 Avenue of the Americas, Second Floor
New York, New York 10019
Tel.:(646) 216-8300

*Attorneys for Plaintiff Shenzhen Huaizhen Innovation Investment Fund Partnership (Limited. Partnership)*

# **Table of Contents**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTS .................................................................................................................................. 2

   A.  Factual Background ....................................................................................................... 2

   B.  Procedural History ........................................................................................................ 5

ARGUMENT ........................................................................................................................ 6

   I.   LEGAL STANDARDS FOR MOTIONS FOR RECONSIDERATION PURSUANT TO
      FRCP 54(b) ................................................................................................................... 6

   II.  THE COURT SHOULD GRANT PLAINTIFF'S MOTION AND SET ASIDE ITS JUNE
      29, 2021 ORDER BECAUSE IT OVERLOOKED GOVERNING SEVENTH CIRCUIT
      PRECEDENT ................................................................................................................. 7

     A.  Seventh Circuit Standard for Vacating Default ....................................................... 7

     B.  Wan Was Required but Failed to Submit Authority and Facts Supporting His Claimed
        Meritorious Defense with His Motion to Vacate. ................................................... 8

     C.  Huaizhen's Expert Testimony Establishes that Wan's Power of Attorney Fully Complied
        With Chinese Law, And Refutes His Proposed Defense. .................................... 11

CONCLUSION ................................................................................................................... 15

**Table of Authorities**

**Cases**

*Acosta v. DT &C Global Mgmt., LLC*,
  874 F.3d 557 (7th Cir. 2017)................................................................................7

*Bieganek v. Taylor*,
  801 F.2d 879 (7th Cir. 1986)................................................................................8

*Caisse Nationale de Credit Agricole v. CBI Indus.*,
  90 F.3d 1264 (7th Cir. 1996)................................................................................7

*Janky v. Lake County Convention & Visitors Bureau*,
  Case No. 3:05-CV-217-PRC, 2006 U.S. Dist. LEXIS 68600 (Sept. 22, 2006) ........7

*Jones v. Phipps*,
  39 F.3d 158 (7th Cir. 1994)..................................................................................8

*Milbank Ins. Co. v. Dennhardt*,
  Case No. 21-CV-1044-JES-JEH, 2021
  U.S. Dist. LEXIS 111856 (C.D. Ill. June 15, 2021)...........................................8, 11

*Murray v. Conseco, Inc.*,
  Case No. 1:03-CV-701-LJM-JMS, 2009
  U.S. Dist. LEXIS 37401 (S.D. Ind. May 4, 2009) ...................................................7

*Obriecht v. Raemisch*,
  517 F.3d 489 (7th Cir. 2008)................................................................................7

*Oto v. Metro. Life Ins. Co.*,
  224 F3d 601 (7th Cir. 2000)..................................................................................7

*Pretzel & Stouffer v. Imperial Adjusters, Inc.*,
  28 F.3d 42 (7th Cir. 1994)....................................................................................8

*U.S. v. $10,000.000 in U.S. Funds*,
  52 F.3d 329, 1995 U.S. App. LEXIS 8576 (7th Cir. Apr. 11, 1995) ........................8

*U.S. v. Di Mucci*,
  879 F.2d 1488 (7th Cir. 1989)..............................................................................8

*U.S. v. Dixon*,
  Case No. 99-C-7239, 2001 U.S. Dist. LEXIS 9709 (July 12, 2001) ........................9

*Wehrs v. Wells*,
  688 F.3d 886 (7th Cir. 2012).............................................................................8, 11

*Wilson v. Warren Cty.,*
  Case No. 4:11-CV-04078-SLD-JEH, 2014
  U.S. Dist. LEXIS 135903 (C.D. Ill. Sept. 26, 2014) ................................................. 7

*Zuccaro v. Ford Motor Co.,*
  Case No. 03-C-2152, 2003 U.S. Dist. LEXIS 20226 (Nov. 10, 2003) ....................................... 7

**Statutes**

9 U.S.C. §201 ................................................................................................. 5

**Other Authorities**

Arbitration Law of the People's Republic of China ................................................. 12, 13

Civil Procedure Law of the People's Republic of China ........................................... 12, 13

**Rules**

FRCP 54 ....................................................................................................... 7

**Treaties**

*United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*,
  June 10, 1958, *United Nations Treaty Series,* vol.330, No.4739, Art. V ............................. 5, 10

Plaintiff Shenzhen Innovation Investment Fund Partnership (Limited Partnership) ("Huaizhen") respectfully submits this memorandum of law in support of its motion pursuant to Federal Rule of Civil Procedure 54(b) (the "Motion"), requesting that this Court reconsider and set aside its Order dated June 29, 2021 ("Order"), which *sua sponte* vacated the default of defendant Kevin Kelin Wan ("Wan") as to Huaizhen's Complaint ("Complaint"), and restore Huaizhen's motion for entry of default judgment to the Court's calendar.[1]

## <u>PRELIMINARY STATEMENT</u>

This Court should reconsider its Order due to a manifest error of law. Governing Seventh Circuit precedent requires a defendant seeking to vacate its default to demonstrate a "meritorious defense," along with good cause and quick action to remedy its default. Even if Wan had good cause for his default and acted quickly, he failed to set forth a meritorious defense to Huaizhen's Complaint. In moving to set aside his default, Wan asserted in a conclusory and vague manner that he has a purported defense to Huaizhen's action to enforce a Chinese arbitration award against him: that the Power of Attorney Wan gave his Chinese attorneys, authorizing them to act on his behalf in the Chinese arbitration, violated Chinese law. Wan failed to provide any support for this supposed "meritorious defense," much less support it with "a developed legal and factual basis," as required by Seventh Circuit law. His claim that he will retain an expert and state a defense in the future is insufficient to allow his default to be set aside, and the Seventh Circuit and this Court (mere weeks ago), have flatly rejected such proffers to vacate defaults.

Moreover, the purported defense Wan raised in support of his motion to vacate his default is not viable under Chinese law and therefore does not warrant setting aside the default, or denying

---

[1] With this memorandum of law, Huaizhen submits the Declaration of Laura D. Castner dated July 13, 2021 ("Castner Decl."), with exhibits including the Expert Opinion on Chinese Laws of Bo Lin ("Lin Rept.") and exhibits thereto.

enforcement of the Chinese arbitration award in Huaizhen's favor. Huaizhen submits with this Motion expert opinion that the Power of Attorney Wan gave his Chinese attorneys in the arbitration fully complied with Chinese statutes, procedural rules and case law. As such, no public policy precludes enforcement of the award against him.[2] Further, none of the defenses asserted in Wan's just-filed Answer are supported by *any* factual allegations, or by any facts or authority submitted with his motion to vacate his default (which actually contradict his defenses). For all these reasons, this Court should reconsider and set aside its Order vacating Wan's default, re-enter default, strike Wan's Answer, and restore Huaizhen's motion for entry of default judgment to the calendar.

## FACTS

### A. Factual Background

Huaizhen is a limited partnership established in the People's Republic of China. (Complaint ¶1; Declaration of Dongping Li in Support of Motion for Entry of Default Judgment (Dkt. 10-12; "Li Decl.") ¶2.) Wan is a U.S. citizen and a resident of the State of Illinois. He is the controlling shareholder, controller, and legal representative of Zmodo Technology Shenzhen Corp. Ltd. ("Zmodo"), a Sino-foreign joint venture company established in the People's Republic of China, with its address in Shenzhen, People's Republic of China. (Compl. ¶¶3, 10; Li Decl. ¶4.)

On March 28, 2017, Wan, Huaizhen and Zmodo entered into an agreement "Concerning Capital Increase and Subscription Agreement of Zmodo Technology Shenzhen Corp." (the "2016 Agreement"), and Huaizhen and Wan entered into a "Supplemental Agreement to Capital Increase and Additional Share Subscription Agreement." (Compl, ¶11-12; Li Decl. ¶¶5-6.) Pursuant to the 2016 Agreement and fulfilling its obligation thereunder, on May 12, 2016, Huaizhen paid the

---

[2] If Wan's defense was viable and he knew when he signed and submitted the Power of Attorney that it was ineffective, such conduct would amount to a fraud on Huaizhen (and the Arbitration Court), subjecting Wan to further claims, and potential punitive damages.

investment amount of RMB 15,000,000 to Zmodo.  (Compl. ¶13; Li Decl. ¶7.)

In March 2019, Huaizhen, Wan and Zmodo entered into a "Share Repurchase Agreement of Zmodo Technology Shenzhen Corp. Ltd." (the "Share Repurchase Agreement"), and agreed Wan would repurchase the Zmodo shares held by Huaizhen under the 2016 Agreement.  (Compl. ¶14, Ex. B; Li Decl. ¶8, Ex. A[3])  After Wan failed to pay the amount due to Huaizhen on June 30, 2019, Huaizhen's Chinese counsel, Global Law Office, issued Lawyer's Letters to Wan and Zmodo in August 2019 seeking his fulfilment of his payment obligations and Zmodo's cooperation in assisting Wan to do so.  The letters were received and signed for at Wan's and Zmodo's address in Shenzhen on August 17 and 21, 2019.  (Compl. ¶15-17; Li Decl. ¶¶9-11; Luo Decl. ¶¶7-8.)

Neither Wan nor Zmodo responded, and on August 30, 2019, Huaizhen submitted its Request for Arbitration to the Shenzhen Court of International Arbitration (Shenzhen Arbitration Commission) in Shenzhen, People's Republic of China, under Article 4.2 of the Share Repurchase Agreement, requiring the parties to submit to arbitration any disputes not resolved via amicable consultation.  (Compl. ¶18, Ex. B, p.11; Li Decl. ¶12, Ex. A, p. 11; Luo Decl. ¶¶9-10, Ex. A, p.11.) The Share Repurchase Agreement states, "*The execution, the validity, the interpretation, the performance, and the dispute resolution of this Agreement shall be governed by the laws of China.*" (Compl. ¶19, Ex. B, p.11; Li Decl. ¶12, Ex. A, p.11; Luo Decl. ¶11, Ex. A, p.11.)

On October 9, 2019, the Shenzhen Court of International Arbitration ("Arbitration Court") issued a Notice of Arbitration to Wan, attaching the Rules of Arbitration, Roster of Arbitrators, and Huaizhen's Request for Arbitration and attached exhibits.  (Compl. ¶20; Li Decl. ¶14; Luo

---

[3] The Share Repurchase Agreement in Chinese and a certified translation, attached as Exhibit B to the Complaint and as Exhibit A to the Li Declaration and the Declaration of Zhiqiang Luo in Support of Huaizhen's Motion for Entry of Default Judgment (Dkt. 13-13-3, "Luo Decl.") are governed by a confidentiality clause under Chinese law, and have been redacted; Huaizhen will make unredacted copies available *in camera*, or upon entry of an appropriate protective order.

Decl. ¶12.)  On November 25, 2019 the Arbitration Court issued a Notice on Formation of the Arbitration Tribunal to Huaizhen and Wan, and a Notice of Trial to be held on December 16, 2019, requiring both parties or their authorized agents to appear.  The Arbitration Court further required "[p]ersonnel of both parties who appear in court" to bring original evidence to facilitate cross-examination, and to submit electronic and written case materials.  (Compl. ¶22-23; Li Decl. ¶¶16-17; Luo Decl. ¶¶14-15.)

On December 1, 2019 Wan executed a Power of Attorney authorizing Chinese attorneys Weidong Jiang and Jiayu Pan to act as his arbitration agents with Huaizhen, which was received by the Arbitration Court on December 16, 2019.  Castner Decl. Ex. B, Lin Rept. Appx. III (1). Their powers included:  "to put forward, acknowledge, change, withdraw or waive" the arbitration claims and counterclaims "as an agent," "to defend the principal," "to discuss . . . formation of the arbitration tribunal and to select the arbitrators as an agent," "to attend court hearings, to state the facts and opinions, and to take part in the investigations and cross-examinations," "to mediate and to reconcile as an agent," and "to receive and collect various arbitration documents as an agent." *Id.*

On December 16, 2019, the arbitration tribunal opened a court session to hear the case. Huaizhen and Wan each entrusted their attorneys to attend the trial on their behalf, stated their arbitration claims and answers, submitted exhibits, cross-examined each other's exhibits, answered the tribunal's questions, made final statements and arguments, and agreed to cross-examine post-trial materials in writing.  (Compl. ¶¶24-25; Li Decl. ¶22; Luo Decl. ¶20.)  On December 18, 2019, Huaizhen sought to amend its arbitration claims, particularizing the amounts at issue, and eliminated one claim. (Compl. ¶26; Li Decl. ¶20; Luo Decl. ¶18.)  The next day Wan submitted a list of two supplementary exhibits.  (Compl. ¶27; Li Decl. ¶21; Luo Decl. ¶19.)

At the end of the trial, neither Huaizhen nor Wan expressed any objection to the jurisdiction of the Arbitration Court, the formation of the tribunal, or the arbitration procedures. (Compl. ¶28; Li Decl. ¶22; Luo Decl. ¶20.) All arbitration documents issued by the Arbitration Court, and the arbitration documents and evidentiary materials submitted by the parties and forwarded by the Arbitration Court, were served according to Article 6 of the Rules of Arbitration of the Shenzhen Court of International Arbitration ("Arbitration Rules"). (Compl. ¶29; Li Decl. 23; Luo Decl. ¶21.)

On May 25, 2020, the arbitration tribunal issued its written award (the "Award") "according to law based on the court's trial and the written materials available." (Compl. ¶30, Ex. A; Li Decl. ¶24, Ex. B; Luo Decl. ¶22, Ex. B.)[4] The arbitration tribunal found in favor of Huaizhen, rejecting Wan's asserted defenses and arguments. (Compl. ¶30, Ex. A, pp. 23-24; Li Decl. ¶25, Ex. A, pp. 23-24; Luo Decl. ¶22, Ex. A, *id.*) To date, Wan has not paid Huaizhen any part of the amounts awarded by the arbitration tribunal. (Compl. ¶31; Li Decl. ¶26; Luo Decl. ¶23.)

**B. Procedural History**

On February 1, 2021, Huaizhen initiated this action pursuant to the Federal Arbitration Act, 9 U.S.C. §201, *et seq.* ("FAA"), and the *United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, June 10, 1958, *United Nations Treaty Series,* vol.330, No.4739, p.3, Art. V (the "New York Convention," codified in the FAA), to confirm and enforce the Award. (Dkt. 1). Wan was served with the Summons and Complaint, but failed to timely respond. (Dkt. 2-4). On May 14, 2021 Huaizhen requested entry of Wan's default. (Dkt. 4, 5). On May 17, 2021, the Court entered Wan's default and directing Huaizhen to move for entry of

---

[4] The original arbitration award in Chinese, and the certified translation thereof, attached as Exhibit A to the Complaint and as Exhibit B to the Li and Luo Declarations, are governed by a confidentiality clause under Chinese law, and have been redacted. Huaizhen will make unredacted copies available to the Court *in camera*, or upon entry of an appropriate protective order.

default judgment within 21 days.  On June 7, 2021, Huaizhen served Wan with Notice of Entry of Default, and filed a motion for entry of default judgment (Dkt. 6-15).

On June 17, 2021, Wan moved to vacate the entry of his default, asserting as a meritorious defense that the Power of Attorney he gave his counsel in the Arbitration was invalid.  (Dkt. 16 at ¶10).  Wan claimed he "did not provide [his] counsel with a Power of Attorney notarized and certified by the Chinese Consulate for the purposes of appearing on my behalf at the arbitration proceedings …." (Dkt. 16-1 ("Wan Decl.") at ¶6), that he "expects the evidence . . . to show that the attorneys appearing in the arbitration proceedings did not obtain a valid Power of Attorney to represent him," "intends to retain an expert who will provide testimony that under Chinese law, the attorneys' legal authority was not valid" (Dkt. 16, ¶10), and that, "[b]ecause counsel purporting to represent Mr. Wan in the arbitration were not validly retained by him, it would violate [U.S.] public policy to enforce" the Award.  (Dkt. 16, ¶11.)

On June 29, 2021, before Huaizhen's opposition to Wan's Motion was due, the Court *sua sponte* vacated Wan's default, giving him until July 12, 2021 to respond to the Complaint.  In a July 12, 2021 Answer, Wan asserts affirmative defenses of failure to state a claim; that Wan ostensibly was not given proper notice of the arbitration proceedings and was unable to present his case; that the arbitration procedures were not in accord with the parties' agreement or Chinese laws, rules and regulations; and that recognition or enforcement of the Award would violate U.S. public policy.  (Dkt. 17, p. 14)  Wan's defenses do not mention his Power of Attorney, and neither the Answer nor Wan's June 17, 2021 declaration alleges facts to support any asserted defenses. *Id.*

## ARGUMENT

### I.  LEGAL STANDARDS FOR MOTIONS FOR RECONSIDERATION PURSUANT TO FRCP 54(b)

"Courts have the inherent power to reconsider non-final orders, as justice requires, before

entry of judgment." *Wilson v. Warren Cty.*, Case No. 4:11-CV-04078-SLD-JEH, 2014 U.S. Dist. LEXIS 135903, at *4 (C.D. Ill. Sept. 26, 2014) (citation omitted). Motions for reconsideration, including pursuant to FRCP 54(b),[5] are appropriate to correct "manifest errors of law." *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008); *Wilson*, 2014 U.S. Dist. LEXIS 135903, at *4. A "manifest error" includes a "failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.,* 224 F3d 601, 606 (7th Cir. 2000); *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996). District courts in the Seventh Circuit have granted motions for reconsideration to correct their own errors of law. *See, e.g., Zuccaro v. Ford Motor Co.,* Case No. 03-C-2152, 2003 U.S. Dist. LEXIS 20226 (Nov. 10, 2003) (granting motion due to errors in weighing factors for leave to amend complaint); *Murray v. Conseco, Inc.,* Case No. 1:03-CV-701-LJM-JMS, 2009 U.S. Dist. LEXIS 37401, at *7-8 (S.D. Ind. May 4, 2009) (granting motion where court erred in application of precedent); *Janky v. Lake County Convention & Visitors Bureau*, Case No. 3:05-CV-217-PRC, 2006 U.S. Dist. LEXIS 68600, at *32-33 (Sept. 22, 2006) (granting motion in part due to court's erroneous failure to consider certain evidence and resolve error of law).

II.     **THE COURT SHOULD GRANT PLAINTIFF'S MOTION AND SET ASIDE ITS JUNE 29, 2021 ORDER BECAUSE IT OVERLOOKED GOVERNING SEVENTH CIRCUIT PRECEDENT**

A.     **Seventh Circuit Standard for Vacating Default**

Seventh Circuit law holds that, to vacate a default, a "movant must show good cause, quick action to respond to the default, and a meritorious defense to the underlying allegations." *Acosta v. DT &C Global Mgmt.*, *LLC*, 874 F.3d 557, 560 (7th Cir. 2017); *Wehrs v. Wells*, 688 F.3d 886,

---

[5] Rule 54(b) provides in relevant part that, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

890 (7th Cir. 2012); *U.S. v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989); *Milbank Ins. Co. v. Dennhardt*, Case No. 21-CV-1044-JES-JEH, 2021 U.S. Dist. LEXIS 111856, at *3 (C.D. Ill. June 15, 2021). The defendant must state its defense in its motion to vacate, supported by a developed legal and factual basis. *See Wehrs*, 688 F.3d at 890; *U.S. v. $10,000.000 in U.S. Funds,* 52 F.3d 329, 1995 U.S. App. LEXIS 8576, at *12 (7th Cir. Apr. 11, 1995); *Milbank,* 2021 U.S. Dist. LEXIS 111856, at *3; *Jones v. Phipps,* 39 F.3d 158, 165 (7th Cir. 1994); *Bieganek v. Taylor,* 801 F.2d 879, 882 (7th Cir. 1986) (defense is meritorious if it is good at law, to give the fact finder a determination to make). Assertions "without factual support," "bare legal conclusions," or promises to demonstrate the defense in the future are insufficient. *Acosta*, 874 F.3d at 562; *Wehrs*, *supra*; *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994).

**B.      Wan Was Required but Failed to Submit Authority and Facts Supporting His Claimed Meritorious Defense with His Motion to Vacate.**

Courts in this Circuit will deny motions to vacate that fail to set forth and support a meritorious defense. *Wehrs*, 688 F.3d at 890; *$10,000.000 in U.S. Funds,* 1995 U.S. App. LEXIS 8576, at *12-14; *Milbank*, 2021 U.S. Dist. LEXIS 111856, at *3. The Seventh Circuit in *Wehrs* and this Court in *Milbank* denied motions to vacate where, as here, the defendant vaguely referenced a "meritorious defense," and failed to substantiate it with factual or legal support. In *Wehrs*, the Court stressed that the defendant's time to assert its meritorious defense is in its motion to vacate, noting that it had the chance "to raise specific facts to support his purported meritorious defense in his motion," and failing to do so, could not assert it would do so in the future. *Wehrs*, 688 F.3d at 890 (failure to even attach a proposed answer to the motion left the district court with only conclusory statements in Wells's motion when considering if he raised a meritorious defense); *Milbank,* 2021 U.S. Dist. LEXIS 111856, at *9; *Acosta*, 874 F.3d at 562 (affirming denial of motion to vacate where defendants did not elaborate on or provide support for alleged defenses);

*U.S. v. Dixon*, Case No. 99-C-7239, 2001 U.S. Dist. LEXIS 9709, at *15 (July 12, 2001) (denying motion to vacate where defendants "merely contend they are 'prepared to submit" evidence of their meritorious defense and "presented no evidence" with their motion).

Under the cited authorities, Wan has not sufficiently established a meritorious defense to warrant setting aside his default. Wan's statement of his purported defense to Huaizhen's Complaint consists of unsupported assertions and future pledges:

> If allowed to defend himself on the merits in this matter, <u>Mr. Wan intends to demonstrate that enforcement of the arbitration award would be contrary to public policy</u>. . . . <u>Wan expects the evidence produced in this case to show that the attorneys appearing in the arbitration proceedings did not obtain a valid Power of Attorney to represent him</u>. Mr. Wan will show that Chinese law mandates certain procedural requirements for certification of a Power of Attorney, which were not met. <u>Mr. Wan intends to retain an expert who will provide testimony that under Chinese law, the attorneys' legal authority was not valid</u>.

(Dkt. 16 at ¶10) (emphasis added). Wan further purported to invoke public policy that "attorneys representing parties to legal proceedings, such as arbitrations, be properly engaged," and "[b]asic notions of the American justice system dictate that counsel be selected and engaged at the will of the party," in arguing that his Chinese counsel "were not validly retained by him" and so it would violate public policy to enforce the Award. (Dkt. 16, ¶11)

Wan offered no facts showing he did not actually or validly retain the Chinese attorneys who represented him in the arbitration, or did not actually sign a Power of Attorney authorizing them to act on his behalf in the arbitration. The sole authority he cited in support of his purported

meritorious defense is Article V of the New York Convention, which states in pertinent part that,

> 2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that: . . . (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

But this is simply a statement of what Defendant's proposed defense *is*, not what ostensibly supports it. Wan has not provided any legal support for, or even identified, the unnamed "procedural requirements for certification of a Power of Attorney" under Chinese law, that supposedly were violated by the Power of Attorney he gave his Chinese attorneys. He provided no testimony or factual support from any source as to the substance or meaning of any Chinese law pertaining to powers of attorney, and admitted he had not yet retained an expert to do so. Nor did he provide any legal authority supporting his assertion that the use of the Power of Attorney he gave to his Chinese counsel violates any public policy, of the U.S. or China.

Additionally, although Wan said he "did not provide counsel with a Power of Attorney notarized and certified by the Chinese Consulate for purposes of appearing on [his] behalf at the arbitration proceedings on December 16, 2019" (Dkt. 16-1, ¶6), this does not establish that his Chinese counsel "were not validly retained by him" (Dkt. 16, ¶11), or that they "did not obtain a valid Power of Attorney to represent him" in the arbitration (Dkt. 16, ¶10). In fact, Wan signed a Power of Attorney specifying the powers his Chinese attorneys were authorized to exercise in the arbitration (Lin Rept. Appx. III (1)), and the Award noted that Wan and Huaizhen participated fully in the arbitration through counsel ("The two concerning parties both entrusted their agents to attend the trial;" "the claimant and the respondent respectively stated their arbitration claims and answers, and cross-examined the exhibits presented by the counterparty," "answered the

arbitration tribunal's inquiry questions," "made their final statements," "gave their opinions," "agreed to cross-examine the post-trial materials in writing," and "expressed no objection to the jurisdiction of the court of arbitration, the formation of the arbitration tribunal and all the arbitration procedures"). (Compl. Ex. A, pp. 28-29; Li Decl. Ex. B, pp. 28-29; Luo Decl. Ex. B, pp.28-29.)

Wan asked this Court to vacate his default on the promise that he would retain an expert and assert his defense, sometime in the future. The Courts in *Wehrs* and *Milbank* faced, and roundly rejected, the same vague statements and promises. The same result should apply here.

The additional defenses asserted in Wan's just-filed Answer to the Complaint were not even mentioned in his motion to vacate or his supporting declaration, much less supported with factual and legal authority. Wan's declaration – the only "evidence" he has put in the record - does not deny that he gave a Power of Attorney to his Chinese counsel, that he had notice of the Arbitration proceedings, or that his Chinese counsel participated in those proceedings on his behalf. In fact it is carefully worded to qualify that the Power of Attorney that he gave was not "notarized and certified by the Chinese consulate for the purposes of appearing on [Wan's] behalf at the arbitration proceedings" – which as discussed below is not required by Chinese law and was of no consequence for purposes of the Arbitration and this Court's recognition of the Award.

## C. Huaizhen's Expert Testimony Establishes that Wan's Power of Attorney Fully Complied With Chinese Law, And Refutes His Proposed Defense.

Even if Wan had identified an expert in his motion to vacate, his proposed defense cannot withstand scrutiny. Chinese law does not require certification or notarization of a Power of Attorney given in an arbitration, like the one Wan gave counsel for the Arbitration with Huaizhen.

In support of this Motion for Reconsideration Huaizhen provides the opinion of an independent expert on Chinese law, Bo Lin, a former Assistant Judge of the Shenzhen Intermediate

People's Court from 2004-2009 and 2009-2014, who is now a partner practicing law with China-based Beijing Deheng (Shenzhen) Law Firm. According to Mr. Lin's analysis of applicable Chinese law and procedural rules, the Power of Attorney that Wan gave his Chinese attorneys was valid and did <u>not</u> violate Chinese law. *See* Castner Decl. Exs. A-B.

Separate statutes and procedures govern the use of powers of attorney in Chinese litigation and in Chinese arbitrations. Arbitration agreements are enforceable in China, and a court will not entertain a case that is governed by an arbitration agreement. Lin Rept., §4.1.1, quoting Article 5 of the Arbitration Law of the People's Republic of China ("Arbitration Law"). Under Article 29 of the Arbitration Law, "A party or statutory representative may appoint an attorney or other representative to carry out arbitration activities. To appoint an attorney or other representative to carry out arbitration activities, a power of attorney shall be submitted to the arbitration commission." Lin Rept. §4.1.2, quoting Article 29. The Civil Procedure Law of the People's Republic of China ("Civil Procedure Law"), applicable to civil actions in the People's Republic of China, including actions involving foreign persons, contains specific provisions regarding powers of attorney in *litigation;* in such matters a power of attorney appointing an attorney as a proxy ad litem, submitted by a foreign national from outside the People's Republic of China, "must be notarized by a notarial office in the country of domicile and authenticated by the Chinese embassy or consulate accredited to that country," or comply with formalities stated in relevant treaties between China and the foreign national's country. Lin Rept. §4.1.5, quoting Article 264 of the Civil Procedure Law; §§4.1.3, 4.1.4, quoting Articles 3 and 259 of the Civil Procedure Law. Under Article 271 of the Civil Procedure Law, however, parties, including foreign parties, which have agreed to arbitration may not bring an action in a people's court. Lin Rept. §4.1.6, quoting Article 271 of the Civil Procedure Law.

Parties who agree to arbitrate before the Arbitration Court are deemed to agree to proceed under the Arbitration Rules absent agreement otherwise. Lin Rept. §4.1.7, quoting Article 3 of the Arbitration Rules. Article 24 of the Arbitration Rules provides, "If the parties appoint proxies to carry out arbitration activities, they shall submit to the Arbitration Court a power of attorney stating the specific matters and powers entrusted to them." Lin Rept. §4.1.8, quoting same.

Analyzing these authorities and case authorities interpreting them, Mr. Lin opines that:

- Article 29 of the Arbitration Law requires a party who wants to appoint an attorney to proceed before the Arbitration Court to submit a power of attorney to the arbitration tribunal. Since Wan entrusted an attorney to participate on his behalf in the arbitration, he was required to submit a power of attorney to the Arbitration Court (Lin Rept. §4.2.1);

- Article 5 of the Arbitration Law, providing that a court shall not accept a case where parties have a valid arbitration agreement, makes clear that arbitration and litigation are two different procedures. The Share Repurchase Agreement between Huaizhen and Wan included an arbitration provision pursuant to which Huaizhen sought arbitration, in accordance with the laws of the People's Republic of China and the Arbitration Rules (Lin Rept. §4.2.2);

- Civil Procedure Law Article 264, applicable to powers of attorney for use in litigation, requires a foreign party's power of attorney to be notarized and authenticated by the Chinese embassy or consulate of that country, or verified as required by applicable treaties; while Arbitration Law Article 29 requires that a party wishing to appoint an attorney to act for it in arbitration proceedings simply submit a power of attorney to the arbitration commission, and by its terms does not require notarization or certification procedures. Wan entrusted his Chinese attorneys to arbitrate on his behalf; therefore the power of attorney he gave to them, even if not notarized or certified, did not violate Chinese law. (Lin Rept. §4.2.3);

- Under the Share Repurchase Agreement, Huaizhen and Wan agreed to arbitrate but did not agree on the applicable rules; however under Rule 3(1) of the Arbitration Rules they are deemed to have agreed to arbitrate according to those Rules. Rule 24 of the Arbitration Rules allowed Wan to appoint Chinese counsel to act for him in the arbitration, by submitting to the Arbitration Court a power of attorney specifying the matters and powers to be delegated, which he did. The Arbitration Rules did not require the power of attorney to be notarized or certified:

> [A]ccording to the provisions of Article 3 of the [Civil Procedure Law], only the filing of civil lawsuits can be applied to the [Civil Procedure Law]. Therefore, the provisions of Article 264 of the [Civil Procedure Law] is the provision on the entrustment of attorneys to represent litigation in litigation procedures, but not the provisions on the entrustment of attorneys to represent arbitration in arbitration procedures. [¶] According to Article 29 of the [Civil Procedure Law], the Law does not require notarization and certification procedures for the appointment of attorneys to represent in arbitration. It only stipulates that the parties shall submit a power of attorney to the Arbitration Committee. [¶] Mr. Wan entrusted his attorney from the People's Republic of China to conduct the arbitration, not the litigation. <u>Therefore, its power of attorney, even if not notarized and certified, does not violate the provisions of the [Arbitration Law]</u>.

Lin Rept. §4.2.3. (emphasis added).

Mr. Lin analyzed three civil rulings of Chinese Intermediate People's Courts, finding that powers of attorney submitted by foreigners in Chinese arbitration proceedings were not required to be notarized, certified, or otherwise authenticated, and that the lack of such notarization,

certification, or other authentication did not affect the validity of the powers of attorney. (Lin Rept. §4.3.1, 4.3.2, 4.3.3, Appx. IV, (1)-(3).) As such, Mr. Lin concluded:

> For foreigners who appoint a proxy to conduct arbitration, neither the Chinese laws nor the Arbitration Rules applicable to this case require the power of attorney of the party to appoint a proxy to be notarized and certified. In Arbitration No. 5645, Mr. Wan entrusted his attorney to conduct the arbitration and submitted to the [Arbitration Court] a power of attorney signed by him stating the specific maters and authority of the power of attorney, which complied with the provisions of the Chinese laws and Arbitration Rules applicable to the case and was legal and valid.

Lin Rept. §4.4.

Under the Chinese authorities applicable to the parties' arbitration, the power of attorney Wan gave his Chinese attorneys to represent him therein was valid and sufficient, and not impacted by the lack of notarization or certification. Because Wan cannot establish a meritorious defense to Huaizhen's Complaint for enforcement of the Award, it was error to vacate his default.

## <u>CONCLUSION</u>

For the foregoing reasons, Huaizhen respectfully asks that this Court grant its Motion for reconsideration, reinstate Wan's default, strike Wan's Answer, restore Huaizhen's motion for entry of default judgment to the Court's calendar, and grant such other relief as is just and proper.

Dated: July 13, 2021         **MAZZOLA LINDSTROM LLP**

By: */s/ Laura D. Castner*
Laura D. Castner
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Phone: 310.694.8585
laura@mazzolalindstrom.com

Jean-Claude Mazzola (*admission forthcoming*)
Stephen L. Brodsky (*admission forthcoming*)
Mazzola Lindstrom LLP
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
Phone:  646.216.8440
jeanclaude@mazzolalindstrom.com
stephen@mazzolalindstrom.com

Emma Smoler
Smoler Law Office, P.C.
22 West Washington Street, Suite 1500
Chicago, IL 60602
Telephone: 312.332.9800
Facsimile: 312.332.9801
esmoler@smolerlaw.com

*Attorneys for Plaintiff*
*Shenzhen Huaizhen Innovation Investment Fund*
*Partnership (Limited Partnership)*

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2021, the foregoing document was filed with the Clerk of the Court using the CM/ECF system.  Notice will be sent to all counsel of record and/or parties by operation of the Court's electronic case filing system.  Parties may access this through the Court's electronic case filing system.

By: */s/ Laura D. Castner*
Laura D. Castner
MAZZOLA LINDSTROM LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Phone: 310.694.8585
laura@mazzolalindstrom.com